JODI LINKER
Federal Public Defender
DANIEL P. BLANK
Senior Litigator
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    (415) 436-7700
Facsimile:    (415) 436-7706
Email:        Daniel_Blank@fd.org

Counsel for Defendant YANG

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALVIN YANG,<br><br>Defendant. | **Case No.:** CR 24–0536 SI<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Court:**  **Hon. Susan Illston**<br>**Date:**  February 13, 2026<br>**Time:**  11:00 a.m. |

1

**ARGUMENT**

2     Defendant Alvin Yang, a 55 year-old father of four with no prior arrests or convictions of any

3 kind, is pleased to join the recommendation of the U.S. Probation Officer that the Court impose upon

4 him a noncustodial sentence involving three years of supervision, which is consistent with the

5 stipulated sentencing range in the plea agreement of the parties. *See* PSR Sentencing

6 Recommendation at 2.[1] This recommended sentence represents a slight downward variance under the

7 factors of 18 U.S.C. § 3553(a) below the low end of the advisory guideline range of 8 to 14 months.

8 *See id.* at 1-2.

9     In particular, the U.S Probation Officer submits that such a "noncustodial sentence" is

10 warranted in this honest services wire fraud case involving the bribery of Rodolfo Pada (a contractor

11 working for the City of Milbrae to provide assistance with building inspections) due to Mr. Yang's

12 "lack of sophistication in the scheme, compliance with pretrial services, and the total amount of

13 bribes ($6,883.11)." *Id.* at 2.[2]  As explained by the U.S. Probation Officer:

14
15
16
17
18

> In conjunction with Pada's comments regarding Yang seeming to be new
> to the world of construction and Yang appearing genuinely remorseful, the
> probation officer concludes that it is likely Yang's intentions were not
> derived from a criminalistic thinking style. Rather, it appears Yang was
> naïve and honestly believed what he was doing was just how business was
> done in that field. In spite of whatever his intentions may have been, Yang
> violated the law and must make amends for his mistakes. The probation
> office does not believe a custodial sentence is necessary to achieve the

19

20 [1] Technically, the U.S. Probation Officer recommends three years of probation while the plea
agreement stipulates that the parties will recommend "a term of imprisonment of 0-8 months" to be
21 followed by three-years supervised release. *Compare* PSR Sentencing Recommendation at 1-2 *with*
Dkt. 45 (Plea Agreement) ¶¶ 8, 17. Consistent with the plea agreement, Mr. Yang respectfully
22 recommends a noncustodial sentence of "time served" to be followed by three years supervised
release.
23 [2] Mr. Yang had been introduced to Mr. Pada "through Anders Fung (Mayor of Millbrae, California),
who was a previous business partner of Yang on some real estate projects in San Francisco, and Fung
24 told Yang that Pada was someone that could help him." PSR ¶ 7. The bribery scheme was as follows:
"Beginning on a date unknown, but no later than April 2018, and continuing until to at least on or
25 about December 2019, Yang devised a scheme through kickbacks and bribes, to defraud the public of
its right to honest services of a public official. The objective of the scheme was to expedite and have
26 approved building inspections for properties in which Yang had interest in, in exchange for personal
benefits to Pada. Records showed Yang and Pada routinely met for meals at least 16 times wherein
27 Yang paid the bill each time. Additionally, Yang purchased a $700 treadmill for Pada and had it sent
directly to his home. Text message records displayed Yang and Pada exchanging messages regarding
28 inspections of Yang's properties and scheduling dinners. Additionally, Yang paid for repairs to
Pada's vehicle which totaled around $3,700. In all, Yang received assistance in obtaining inspection
approvals for four different properties in Millbrae." PSR Sentencing Recommendation at 1.

1  
2

> goals of sentencing and instead, strict financial conditions and a term of three years on probation appear to be enough of a safeguard to deter Yang from any future criminal conduct.

3  PSR Sentencing Recommendation at 2. Mr. Yang respectfully agrees with the U.S. Probation Officer

4  that these facts and circumstances warrant a downward variance under the factors of § 3553(a) to a

5  noncustodial sentence of three years of supervision.

6        An additional factor, not expressly addressed by the U.S. Probation Officer, supporting this

7  recommended sentence is "the need to avoid unwarranted sentence disparities among defendants with

8  similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  As noted in

9  the PSR, Mr. Pada "has pleaded guilty to receiving bribes from numerous people and is awaiting

10  sentencing" before this Court in the related case, CR 23-0403 SI. PSR ¶ 15. Among those other

11  people guilty of providing bribes to Mr. Pada similar to Mr. Yang are Defendants Bahman

12  Gahssemzadeh, Reza Khoshnevisan, and Siavash Tahabazof. *See* CR 23-0418 SI (Gahssemzadeh),

13  CR 23-0420 SI (Khoshnevisan), CR 23-0421 SI (Tahabazof). Like Mr. Yang, each of those three

14  defendants pleaded guilty to Conspiracy to Commit Honest Services Wire Fraud, in violation of 18

15  U.S.C. § 1349, and each was sentenced to three years of probation and a $25,000 fine, due to their

16  schemes to bribe Mr. Pada. *See id.* Each of those three defendants is similarly situated to Mr. Yang,[3]

17  except to the extent that they are wealthy and sophisticated enough to have retained private defense

18  counsel to negotiate pre-indictment dispositions for their noncustodial sentences. *See id.*

19        If anything, the facts set forth in the PSR suggest that Mr. Yang was *less* culpable than these

20  three other defendants also convicted of bribing Mr. Pada due to Mr. Yang's lack of sophistication:

21  
22  
23  
24

> Pada explained to the FBI that Yang was "different" from the other people identified as giving bribes in Pada's plea agreement, in that Yang was a friend and Pada did not want Yang to have problems with his construction. Pada provided faster inspections, guided Yang, and gave him advice. Yang was different because he did not know how to read plans and did not have the knowledge other contractors did.

25  PSR ¶ 15.[4] Accordingly, it is respectfully submitted that a sentence no greater than the three years of

26  

27  [3] The criminal record of those three defendants is unknown to undersigned counsel, but it cannot be any less extensive than that of Mr. Yang, who has no prior arrests or convictions of any kind. *See*

28  PSR ¶¶ 33-39.

[4] Mr. Yang immigrated from China and has only basic English skills. PSR ¶¶ 43, 51

1    probation imposed upon those three other defendants is warranted here under the factor of avoiding

2    unwarranted sentencing disparities pursuant to § 3553(a)(6).

3        Yet another factor weighing in favor of the noncustodial sentence recommended by the U.S.

4    Probation Officer is the difficult but ultimately positive change in Mr. Yang's life since the criminal

5    conduct from 2018 to 2019 in this case. Mr. Yang's construction company went out of business in

6    2020 due to the COVID pandemic. PSR ¶ 45. "In conjunction with the business not doing well and

7    the amount of time he was spending at work, his marriage began to suffer as a result. Yang and his

8    ex-wife began arguing and ultimately separated in 2022 and finalized their divorce in 2023." *Id.* As

9    noted in the PSR, Mr. Yang's mental health was strained during that same time period:

> Yang suffered from depression from 2022-2023 and was prescribed medication to alleviate his symptoms. He shared he felt as if life had no purpose and described feelings of "having no future." Although he has no present suicidal thoughts, Yang disclosed he often thought about suicide once his businesses began to fail. He recalled a time during the Covid-19 pandemic when his business was failing and the feeling of helplessness he internalized. Yang began to make comments to his friends and his accountant regarding his financial situation and ultimately, his friends assisted with helping him through that tough time. After his divorce, he was not seeing his children as often and it took a toll on his mental health and overall well-being. Yang shared he went to see a doctor and was placed on medication which he took until early 2025. In October 2023, Yang began participating in outpatient mental health services facilitated by the Hope program in San Mateo. He attends bi-weekly individual counseling sessions which he described as being helpful. Yang shared he sometimes still gets nervous during certain situations or looks back on the past, but attending therapy helps him relax and change his thoughts.

19    PSR ¶ 49. Around the time that Mr. Yang began receiving mental health treatment, he met his current

20    partner, Bella Wu, through a friend, and they began a relationship. PSR ¶ 45. They soon moved in

21    together and had a son, East Wu (18 months). *Id.* "Yang described Bella as a 'good mom' and as his

22    support system throughout the entirety of his journey through this criminal case." *Id.* Mr. Yang also

23    remains close with all three of his older children, Wesley (21), Justin (16), and Luvena (13), even

24    though they live primarily with their mother. PSR ¶ 44.

25        Although Mr. Yang is saddened that his father died of liver cancer shortly after the

26    commencement of the instant case in 2024, precluding him from travelling to China to be with him or

27    attend his funeral, and that his present unemployment pending the resolution of this case has put a

28    "burden on Bella of having to take care of the family financially," he currently enjoys "taking care of

their baby and being a stay-at-home father." PSR ¶¶ 46-47. At the same time, Mr. Yang looks forward to being able to return to work in the construction field, "possibly doing work for other general contractors." PSR ¶ 47.

Finally, Mr. Yang remains remorseful for his offense. As reflected in the discovery provided by the government, he made a full recorded confession to the FBI on November 4, 2024, just four days before he was summoned into magistrate court for arraignment on the indictment in this case. *See* PSR ¶ 4; *see also* US001036-39 (FBI 302 provided to the U.S. Probation Officer). Having learned his lesson, Mr. Yang is determined that nothing like this will ever happen again.

**CONCLUSION**

For the aforementioned reasons, the Court should sentence Mr. Yang to a term of imprisonment of "time served" to be followed by three years of supervised release.

Dated:      February 4, 2026                           Respectfully submitted,

                                                        JODI LINKER
                                                        Federal Public Defender
                                                        Northern District of California

                                                               /S
                                                        DANIEL P. BLANK
                                                        Senior Litigator