```
CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7230
    david.ward@usdoj.gov

Attorneys for United States of America
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALVIN YANG,<br><br>    Defendant. | CASE NO. 3:24-CR-00536 SI<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

## I.  INTRODUCTION

Defendant Alvin Yang comes before the Court for sentencing after pleading guilty to one count of conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349, and two counts of honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346. Yang admitted to paying a stream of bribes over the course of 18 months to a building inspector for the City of Millbrae to corruptly influence the process for awarding permits and inspections for Yang's construction projects. It was unabashed and egregious corruption. Yang's crimes undermined key building and construction safety regulations and put homeowners and others at risk. It unfairly benefitted the corrupt over honest builders. And like all corruption cases, its exposure undermines trust in government. A custodial

sentence is warranted and necessary in this case to reflect the seriousness of the crime, and to send a message of deterrence. Therefore, the government respectfully ask the Court to sentence defendant Yang to eight months in custody followed by one year of supervised release.

## II.     BACKGROUND

Since 2008, defendant Yang has worked in the real estate and home remodeling business in the San Francsico Bay Area. *PSR* ¶ 45. In 2015 Yang began working as a general contractor for his own company, Yess Construction, building and remodeling homes and apartments. *Id.* At the time of the charged conspiracy in this case, Yang was working primarily in Millbrae, California.

As part of his construction and remodeling work, Yang was required to obtain multiple building permits, and to pass multiple safety and soundness inspections, all to insure that his projects were built adhering to state and local building code. This approval process could be slow, often require additional work, and imposed additional costs on builders and contractors. Yang sought to illicitly circumvent this process, and to do so, he turned to a deeply corrupt building inspector, Rodolfo Pada.[1]

Pada was one of the inspectors tasked with overseeing permits and approving inspections for Yang's properties, and over an 18-month period, Yang plied Pada with a host of gifts and benefits – expensive meal, golf at an exclusive country club, a free treadmill, and car repair services. *PSR* ¶¶ 9-13. In his Plea Agreement, Yang admits to paying for at least 16 meals for Pada, including thousands of dollars for dinners at sushi restaurants and steakhouses. *Dkt. 45* (Yang Plea Agreement). Among Yang's other bribes were a round of golf for Pada at the Green Hills Country Club, a private golf club in Millbrae, a $700 treadmill Yang purchased and had delivered to Pada's house, and $900 in payments for car repairs for one of Pada's vehicles. *Id.*

The bribes were directly tied to official acts by Pada. At the time, Pada was working for a company called CSG Consulting, which was contracted by the City of Millbrae to perform and approve inspections on construction and remodeling projects. *PSR* ¶ 6. By Yang's own admission, he paid bribes to Pada to facilitate inspection approvals for four properties in Millbrae: 219 Castenada Drive,

---

[1] Pada has pled guilty in a separate case before the Court, admitting to accepting over $15,000 in bribes, over a 17-year period, all while he was employed as a plan checker at the San Franscisco Department of Building Inspection. *See United States v. Rodolfo Pada*, 23-CR-0403 SI

U.S. SENTENCING MEMORANDUM                    2
3:24-CR-00536 SI

1327 Vista Grande, 1224 Frontera Way, and 1359 Ridgewood. *PSR* ¶ 14. Those included final inspections, where the properties were inspected to insure, among other things, that they met fire, flooding and earthquake safety codes, that wiring, gas, electrical and plumbing work was up to code, and that the residence otherwise met all federal, state, and local building code requirements. [2]

The evidence, including Yang's admissions, show a direct link between the bribe payments and the inspection approvals. For example, one day after Yang paid for a round of golf for Pada, Pada texted Yang a picture of a computer screen showing that he had finalized the status of a construction project at one of Yang's properties, 1327 Vista Grande. *PSR* ¶ 10. In another instance, on October 21 2019, and 22, 2019, Yang and Pada texted one another, with Yang asking Pada to approve an inspection on one of his properties, while at the same time inviting him to dinner at Sushi Kei, where later that evening he would pay $236 for a lavish sushi dinner for Pada. *Dkt. 45*. Two months later, Yang would pay $900 for Pada's car repairs. *Id*. These were only two of more than $6,883 in bribes Yang paid to Pada.

Both Yang and Pada knew their conduct was wrong. When Pada and Yang were arranging for Yang to pay for Pada's golf, texts show that Yang said to Pada, "*I don't want to show the name*" on the reservation because then "*other members will see who is play.*" *PSR* ¶ 10. Yang explicitly admitted in his Plea Agreement that "*we both knew that it was improper for me to pay for a golf outing for Pada.*" *Dkt. 45* (Plea Agreement).

### III. SENTENCING GUIDELINES CALCULATION

The government agrees with U.S. Probation's calculation of the Guidelines. Specifically, the government and Probation agree that the Guidelines for defendant Yang are as follows:

a. Base Offense Level, U.S.S.G. §2C1(a)(2):    12

b. Specific offense characteristics under U.S.S.G. Ch. 2:

   Multiple Bribes; §2C1.1(b)(1)    +2

   Amount of Bribes Greater Than $6,500 § 2C1.1(b)(2); § 2B1.1(b)(1)(B)    +2

c. Acceptance of Responsibility, U.S.S.G. § 3E1.1(a), (b):    - 3

d. Zero-Point Offender, U.S.S.G. § 4C1.1(a) & (b)    -2

---

[2] *See:* https://ci.millbrae.ca.us/DocumentCenter/View/365/Building-Inspection-FAQ-PDF

   e.  Adjusted Offense Level:  11

The government's understanding, based on the criminal history information in the Presentence Report, is that Yang is a Criminal History Category I. *PSR* ¶ 31. As a result, his Sentencing Guidelines range is 8 - 14 months. *PSR* ¶ 61.

## IV. SENTENCING RECOMMENDATION

### a. Legal Standard

The U.S. Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process, and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct, and;

  (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### b. The Government's Recommended Sentence Vindicates the 18 U.S.C. §3553(a) Sentencing Factors

#### *1. The nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense*

Building codes and permit and inspection requirements exist to ensure the safety and soundness of buildings and construction work. These rules and requirements are in place literally to keep people safe in their homes and their workplaces. When corrupt individuals such as Yang and Pada pay or accept bribes for building permits and inspections, it undermines the ability of public agencies such as the City of Millbrae to meet its responsibilities as an oversight agency tasked with keeping its citizens'

safe. It puts people at risk of harm in their homes and businesses. Any sentence imposed in this case must reflect the potential harm Pada and Yang's corruption could have caused.

Bribery schemes also harm the honest builders and companies who do not receive favored treatment. Everyone is supposed to be on a level playing field when it comes to property inspections. When the corrupt few are favored, they benefit in time and money over honest contractors. The corruption of the few disadvantage the many honest.

More broadly, corruption corrodes public confidence in their government, and their elected and appointed officials. Courts have repeatedly recognized and condemned the societal harm caused by public corruption. *See e.g, United States v. Brennan* 629 F. Supp. 283, 300 (E.D.N.Y. 1986) ("Bribery is a betrayal of trust. The expectation that one will do what one is relied on to do is a precious necessity of every social enterprise . . . no crime is more corrosive of our institutions."). *See also United States v. Sorenson* 233 F.Supp.3d 690, 697 (S.D. Iowa, 2017) , *citing* Pew Research Center, *Beyond Distrust: How Americans View Their Government* 25 (2015) ("it should be of grave public concern that approximately 74% of Americans believe that, in general, 'elected officials put their own interests ahead of the country's'").

The nature and circumstances of Yang and Pada's crimes – the risk it placed homeowners in, the disadvantages it placed honest contractors in, and the larger public impact of the exposure of this crime – all warrant the imposition of a significant sentence in this case, including a term of custody.

### 2. The History and Characteristics of the Defendant

Defendant Yang's story should be the embodiment of the American dream. Yang obtained a college degree in business, emigrated from China as a young man, built a business in the United States, married, and had three children. *PSR* ¶ 43, 44, 45. Yang was an educated professional businessman who had operated in real estate and construction in the Bay Area since 2008. *Id.*

In his sentencing memo, defendant writes that Yang had a "lack of sophistication" and as such, he should be deemed less culpable than other defendants convicted of bribing Pada. *Dkt. 50* (Def. Sent. Memo). But other than one self-serving statement taken from an interview of Pada by the FBI (where he separately admitted to providing preferential treatment of Yang), defendant cites to no evidence that demonstrates that Yang had any such lesser degree of sophistication. In fact, the evidence in this case

demonstrates otherwise. After operating in the real estate business and home repair business since 2008, and operating his own contracting firm since 2015, Yang cannot credibly claim that he had such a marked "lack of sophistication" of the rules and laws governing bribery of public officials that he should be deemed less culpable than other defendants. Yang was an experienced contractor, and a college educated businessman who has lived in the United States for decades. As such, he knew full well that it was wrong and illegal to bribe public officials in return for official actions.

### 3. *Need for the sentence to afford adequate deterrence to criminal conduct and to promote respect for the law*

General deterrence is of particular importance in public corruption cases. It is critical that the Court impose a sentence that will send a message to others generally, but in particular in the San Francisco Bay Area, that public corruption crimes warrant significant punishment. The Court's sentence in this case can send a message that those convicted of public corruption offenses will face consequences commensurate with the damage that such crimes cause to the public's faith in government institutions. The road to restoring faith in government and public institutions is long, and no one case will restore the trust and faith that has been lost. But the imposition of a significant sentence in this case can be one step towards signaling to the public that corruption is not, and will not, be tolerated, and that those who engage in public corruption crimes will face severe consequences. As the district court in *United States v. Spano* eloquently explained:

> We need not resign ourselves to the fact that corruption exists in government. Unlike some criminal justice issues, the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable. The only way to protect the public from the ongoing problem of public corruption and to promote respect for the rule of law is to impose strict penalties on all defendants who engage in such conduct.

*United States v. Spano*, 411 F.Supp.2d 923, 940 (N.D. Ill. 2006).

### 4. *Need to avoid unwarranted sentence disparities among similarly situated defendants*

Section 3553(a) identifies the need for the Court to avoid sentencing disparities between similarly situated defendants. While each case and each defendant must be judged independently, and acknowledging that the drawing comparisons in an attempt to avoid unwarranted sentencing disparities

U.S. SENTENCING MEMORANDUM                 6
3:24-CR-00536 SI

is challenging, the government believes that the Court can and should look to the recent related public corruption cases that have come before it in determining the appropriate here.

Most apt are the cases cited by defendant Yang in his sentencing memo – the bribery conspiracies involving contractors and building consultants Sia Tahbazof, Reza Khoshnevisan, and Bahman Ghassemzadeh, and San Francisco Department of Building Inspection plan checkers Cyril Yu, Bernard Curran, and Pada. *See United States v. Sia Tahbazof,* 23-CR-00421 SI; *United States v. Bahman Ghassemzadeh*, 23-CR-00418 SI; *United States v. Reza Khoshnevisan,* 23-CR-00420 SI; *United States v Cyril Yu*, 21-CR-0402 SI; *United States v. Bernard Curran*, 21-CR-0453 SI.

Defendants Tahbazof, Khoshnevisan, and Ghassemzadeh all admitted to paying over $40,000 in bribes to Pada and over $15,000 in bribes to Yu. *Id.* Additionally, Tahbazof and Khoshnevisan admitted to paying over $15,000 in bribes to DBI building inspector Curran. *Id.* Defendants Tahbazof, Khoshnevisan, and Ghassemzadeh were all sentenced by this Court to terms of three years of Probation. *Id.* Defendants Curran and Yu, both public employees, were sentenced to 12 months of custody.

Defendant Yang argues in his Sentencing Memorandum that he is "similarly situated" to Tahbazof, Khoshnevisan, and Ghassemzadeh, and like them, he should be sentenced to probation. *Dkt. 50.* But that comparison is misplaced. Tahbazof, Khoshnevisan, and Ghassemzadeh all approached the FBI and the U.S. Attorney's Office *before* they had been charged or their criminal conduct discovered, and they cooperated extensively with the government, providing evidence that directly led to the convictions of three the corrupt DBI employees, Bernard Curran, Rodolfo Pada, and Cyril Yu.

Yang falls between Yu/Curran and Tahbazof/Khoshnevisan/Ghassemzadeh. The amount of Yang's bribes were lower than those of Tahbazof, Khoshnevisan, and Ghassemzadeh, and Yang was not a public official such as Curran and Yu, who arguably owed a greater duty of honest services to the public. But Yang also did not cooperate, and he did not seek a resolution of his case until indicted. And like all of the above-listed defendants, Yang betrayed the public trust, threatened public safety by undercutting necessary safety and soundness requirements, and engaged in base corruption. As such, a sentence of less than 12 months, but more than probation, is warranted. A sentence of eight months in custody for Yang would avoid unwarranted sentencing disparities between similarly-situated defendants.

Finally, the government does not believe that a three- year term of supervised release is necessary. Defendant Yang has no criminal history, no history of significant drug or alcohol abuse, and no mental or emotional problems significant enough to warrant an extended term of supervised release. *PSR* ¶ ¶ 48, 49, 50. He is 55 years old, with a significant other and a young child  There appears to be little risk of recidivism. Given this, a one-year term of supervised release is sufficient but not greater than necessary to meet the goals of sentencing in this case.

## IV.  CONCLUSION

For all of the reasons above, the government respectfully asks the Court to sentence defendant Yang to a term of imprisonment of eight months, followed by one year of supervised release.

DATED: February 6, 2026                              Respectfully submitted,

                                                     CRAIG H. MISSAKIAN
                                                     United States Attorney


                                                        */s/ David J. Ward*
                                                     DAVID J. WARD
                                                     Assistant United States Attorney

U.S. SENTENCING MEMORANDUM                      8
3:24-CR-00536 SI